# Exhibit E

Page 1

```
                                    VOLUME:  I
                                    PAGES:   1-97
                                    EXHIBITS: 1-1
         UNITED STATES DISTRICT COURT
           DISTRICT OF MASSACHUSETTS


                          C.A. NO. 1:13-cv-13086-GAO

    SIMEON NILES,                      )
           Plaintiff,                  )
                                       )
    v.                                 )
                                       )
    TOWN OF WAKEFIELD, STEVEN          )
    SCORY, in his individual           )
    capacity, KENNETH SILVA, in        )
    his individual capacity,           )
    JOHN WHALEY, in his individual     )
    capacity and SCOTT REBOULET,       )
    in his individual capacity,        )
           Defendants.                 )
```

Job No. CS1953180

    DEPOSITION OF SIMEON NILES, a witness called on behalf of the Defendants, pursuant to the applicable provisions of the Massachusetts Rules of Civil Procedure, before Margaret G. Oliver, a Professional Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the offices of Louison, Costello, Condon & Pfaff, LLP, 101 Summer Street, Boston, Massachusetts, on Monday, November 10, 2014, commencing at 10:38 a.m.

Page 90

1  Having taken a brief break, we are going
2  to suspend the deposition of Mr. Niles at this
3  time pending some additional production of
4  documents from plaintiff's counsel.
5      Q. Is there anything else you want to add?
6  Or not just add, but are there any answers that
7  you put to my questions that you, on reflection,
8  want to amend or change?
9      A. I would like to amend.
10     Q. All right. What question -- what
11 specific area would you like to amend?
12     A. When I first met with Dr. Kidd.
13     Q. Okay.
14     A. I think you asked me a question of what
15 happened.
16     Q. Okay.
17     A. And I think the only -- the reason that
18 I went to meet with Dr. Kidd I was asked to wait
19 14 days or so and I attend -- Dr. Kidd obviously
20 examined me. And he recommended me immediately to
21 go to see a chiropractor. And I -- that was
22 extremely important. That was the first doctor
23 that I saw, the chiropractor. And then from the
24 chiropractor, then I saw all other doctors.

Page 91

1      Q. Okay.
2      A. Because at that time, I was in severe
3  pain. And I cannot leave that out. I will speak
4  up if I were leaving here without the chiropractor
5  being add or any of the doctors such as a
6  neurologist that I have met.
7      And this was a long and a difficult
8  struggle for almost two and one half years of
9  constant annoyance, night sweats and post
10 traumatic stress. It is not easy. I have never
11 been apprehended in my whole life. And I take
12 this extremely -- and I'm not taking it lightly.
13     I could have died that same day with
14 four policemen with four guns almost half the size
15 of this table, and recommended that I should lie
16 on the floor, step on my lower back. And I just
17 want to summarize that. And it bothering me up to
18 this day.
19     Q. Okay.
20     A. I never was on sleeping pills. I am on
21 sleeping pills now. So I have to take it very
22 seriously. At that point in time, I was 67 years
23 old, and I could have a very massive heart attack
24 and was seriously disrespected.

Page 92

1      Q. Okay. Mr. Niles, you said that you went
2  to see a chiropractor. Who was that?
3      A. That was the chiropractor from
4  Wakefield. I can't remember exactly his name.
5  But I just think he should be notified in my
6  minutes.
7      Q. And how many times did you see the --
8      A. Probably almost two weeks daily.
9      Q. And what time frame was this?
10     A. Less than 14 days after the episode.
11     Q. And so you saw him for about two weeks?
12     A. About two or three weeks, in that area,
13 yes.
14     Q. And as you sit here today, you can't
15 recall his name?
16     A. I can't remember exactly, but you have
17 the information.
18     Q. Okay. And you've used the term "post
19 traumatic stress." Has any doctor told you that
20 you're suffering from post traumatic stress?
21     A. Yes, because I have never been on
22 sleeping pills in all my life.
23     Q. And which doctor told you this?
24     A. All the doctors I have met, even

Page 93

1  Dr. Kidd, psychologist, psychiatrist, all of them
2  came up with that notion.
3      Q. Okay. And who is prescribing you
4  sleeping pills?
5      A. My primary care doctors, as well as the
6  psychologist and psychiatrist recommend the
7  sleeping pills.
8      Q. But who is the one who's actually
9  prescribing them?
10     A. Dr. Kidd prescribes.
11     Q. And what kind of -- what's the
12 medication?
13     A. Tamparizain. I think you have that
14 information. I can't remember it now.
15     Q. But it's a -- it's a prescription, not
16 over the counter?
17     A. No.
18     Q. It's a prescription?
19     A. It is a prescription.
20     Q. Okay.
21     A. Thirty of them is $400. Frightfully
22 expensive. Because I'm having anxiety,
23 irritability, cannot sleep. I never can get eight
24 hours of sleep, enough. So I want you to

Page 94

1  understand it affected me terribly.
2  Q. Okay.
3  A. I've never been affected in my life of
4  such nonsense.
5  Q. And have you -- prior to coming here
6  today, last evening did you take the sleeping
7  pills?
8  A. Yes.
9  Q. Do you take them every night?
10  A. Every night. I try not to have every
11  night, but some nights is worse than other nights.
12  Q. Okay.
13  MR. LOUISON: Thank you.
14  MR. LEV: Do you want to suspend --
15  MR. LOUISON: Yeah. And now we're going
16  to suspend the deposition of Mr. Niles.
17  (Whereupon the deposition suspended at
18  12:01 p.m.)

Page 95

1  CERTIFICATE
2  COMMONWEALTH OF MASSACHUSETTS
3  MIDDLESEX, SS.
4
5  I, Margaret G. Oliver, Notary Public in
and for the Commonwealth of Massachusetts, do
6  hereby certify that SIMEON NILES, the witness
whose deposition is hereinbefore set forth, was
7  duly sworn by me and that such deposition is a
true record of the testimony given by the witness.
8  I further certify that I am neither
related to or employed by any of the parties
9  hereto or counsel to this action, nor am I
financially interested in the outcome of this
10  action.
In witness whereof, I have hereunto set my
11  hand and seal this 21st day of November 2014.
12
13
Margaret G. Oliver
14  Notary Public
My commission expires: May 18, 2018
15
16
THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT
17  DOES NOT APPLY TO ANY REPRODUCTION OF THE SAME BY
ANY MEANS UNLESS UNDER THE DIRECT CONTROL AND/OR
18  DIRECTION OF THE CERTIFYING REPORTER.

Page 96

ERRATA SHEET
VERITEXT CORPORATE SERVICES
800-567-8658
ASSIGNMENT NO. CS1953180
CASE NAME: Niles, Simeon v. Town Of Wakefield
DATE OF DEPOSITION: 11/10/2014
WITNESS' NAME: Simeon Niles

PAGE/LINE(S)/   CHANGE      REASON

Simeon Niles

SUBSCRIBED AND SWORN TO
BEFORE ME THIS____ DAY
OF_____, 2014.

_____
NOTARY PUBLIC
MY COMMISSION EXPIRES_____

Page 97

Veritext Legal Solutions
290 W. Mt. Pleasant Ave. - Suite 3200
Livingston, New Jersey 07039
Toll Free: 800-227-8440  Fax: 973-629-1287

_____, 2014

To: Dimitry Lev, Esq.

Case Name: Niles, Simeon v. Town Of Wakefield
Veritext Reference Number: 1953180
Witness: Simeon Niles    Deposition Date: 11/10/2014

Dear Sir/Madam:

The deposition transcript taken in the above-referenced matter, with the reading and signing having not been expressly waived, has been completed and is available for review and signature. Please call our office to make arrangements for a convenient location to accomplish this or if you prefer a certified transcript can be purchased, which can be sent to you or the deponent directly.

If the jurat is not returned within thirty days of your receipt of this letter, the reading and signing will be deemed waived.

Sincerely,

Production Department

Cc: Douglas I. Louison, Esq.
    Chantelle M. D'Angelo, Esq.